UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

LORI ROBINSON,

        Plaintiff,

                v.                                          Civil Action No. 12-147 (JDB)

ERGO SOLUTIONS, LLC,

        Defendant.

## MEMORANDUM OPINION & ORDER

Before the Court are several procedural motions, some from plaintiff Lori Robinson and some from defendant Ergo Solutions, LLC ("Ergo"). This Title VII default judgment action has been characterized by an endless stream of extraordinarily sloppy (and sometimes frivolous) filings—from both parties. This latest batch is no different. In an effort to enforce the default judgment she has already obtained, Robinson has filed [51] [53] [54] [61] four motions for orders from the Court to release funds held by third-party garnishees (some of which appear to be duplicates, filed on this Court's docket by accident). For its part, Ergo has filed [40] a motion to vacate [32] the Court's entry of a $20,000 default judgment—its third motion to vacate since the Clerk of Court's entry of default. And, finally, apparently facing a cash shortfall due to Robinson's aggressive use of writs of attachment, Ergo also filed [57] what it styled an "emergency" motion, asking (1) to stay or dissolve some of the writs of attachment; (2) for an order requiring one of the garnishees to deposit the garnished funds with the Court's registry; and (3) for reconsideration of [39] the Court's Order granting Robinson's unopposed motion for attorney's fees, as well as belated permission to file an opposition brief, and take discovery from

Robinson (and her counsel) on the attorney's fees issue. The Court will consider each motion in turn.

## BACKGROUND

The tortured history of this Title VII proceeding has already been detailed at length in [23] [26] [31] [33] [39] five written opinions, so it will be repeated here only as necessary to resolve the motions that are now pending. On March 4, 2014, the Court entered a default judgment in favor of Robinson and against Ergo, in the amount of $20,000. See Mar. 4, 2014 Order [ECF No. 32]; Mar. 4, 2014 Mem. Op. [ECF No. 33]. By that time, the Court had already considered and rejected two motions from Ergo to vacate the Clerk's entry of default (as well as an untimely motion to dismiss, raising the same arguments as the motions to vacate). See Feb. 12, 2014 Mem. Op. & Order [ECF No. 31]; Feb. 3, 2014 Order [ECF No. 26]; Jan. 24, 2014 Mem. Op. [ECF No. 23]. In doing so, the Court noted Ergo's habit of filing motions with "no acknowledgment of the series of adverse rulings finding all of Ergo's arguments to be untimely, meritless, or (usually) both." Feb. 12, 2014 Mem. Op. & Order at 2.

A few weeks later, on March 21, 2014, Robinson filed [34] a motion for attorney's fees. Ergo did not respond. The Court granted the fee request as conceded about a month later, because the Local Rules require any opposition brief to be filed within 14 days of a motion, and because this was "not the first time Ergo [had] ignored Robinson's filings." Apr. 17, 2014 Order [ECF No. 39] at 2 (awarding $36,050 in attorney's fees and $2,280 in costs). Two days later, Ergo filed [40] its third motion to vacate.

Around this time, Robinson also filed [35] [36] [37] [38] [44] five applications for writs of attachment, seeking to enforce her judgment (and the subsequent fee award) by attaching

debts owed to Ergo by a handful of local businesses.[1]  The Clerk of Court granted the applications for the writs of attachment on April 21, 2014, and on May 19, 2014.  Since that time, the various third-party garnishees have frozen their accounts payable to Ergo, consistent with their obligations under the D.C. Code and the terms of the writs themselves.  Robinson then filed [51] [53] [54] [61] a series of "motions for an order to release funds" held by some of the third-party garnishees, as well as [48] [49] [58] [59] [60] objections to the responses filed by some of the garnishees to the Clerk of Court's interrogatories.  At least four of these filings appear to have been duplicates, filed by Robinson's counsel by accident.  See, e.g., June 25, 2014 Notice to Withdraw Docket Entry.

Apparently, Robinson's aggressive attachment campaign—which has resulted in attachments in excess of $115,000 dollars, even though Ergo only owes Robinson a total of $58,330 dollars—has placed significant stress on Ergo's cash flow situation.  In fact, Ergo's CEO claims that Ergo will not be able to meet its payroll obligations as early as July 7, 2014, unless the Court stays, modifies, or dissolves some of the writs of attachment.  See Aff. of Courtland Wyatt, Attach 1. to Def.'s Emergency Mot. [ECF No. 57-1] ¶ 5.  For this reason, Ergo filed an "emergency" motion seeking relief and, out of respect for the collateral consequences that could be faced by Ergo's employees, the Court ordered briefing on an expedited schedule.  All of the motions are now fully briefed and ripe for resolution.

### DISCUSSION

**I. Motion to Vacate the Default Judgment**

The Court has already denied several motions from Ergo, each challenging Robinson's method of serving process or seeking to vacate the Clerk of Court's entry of default (or both).

---

[1] To be precise, Robinson's counsel filed six applications, but one of them was apparently a duplicate filed by accident.  See May 19, 2014 Notice of Corrected Docket Entry.  For reasons unknown, Robinson's counsel is consistently unable to properly file documents through the CM/ECF system on his first attempt.

See Feb. 12, 2014 Mem. Op. & Order; Feb. 3, 2014 Order; Jan. 24, 2014 Mem. Op. Since that time, the Court has held a damages hearing, see Feb. 19, 2014 Minute Entry, and has entered a default judgment in favor of Robinson, see Mar. 4, 2014 Order [ECF No. 32]. Apparently undeterred, Ergo now moves to vacate the default judgment. The Court will deny Ergo's latest motion to vacate, just as it denied the others.

At the outset, it is important to "note that there is a distinction between the appropriate standard for setting aside a default and that appropriate for setting aside a default judgment." Jackson v. Beech, 636 F.2d 831, 835 (D.C. Cir. 1980). "A default can be set aside under rule 55(c) for 'good cause shown,' but a default that has become final as a judgment can be set aside only under the stricter rule 60(b) standards for setting aside final, appealable orders." Id. For this reason, Ergo must come forth with a stronger showing to vacate the default judgment than it would have needed to vacate the default. See, e.g., Capital Yacht Club v. Vessel AVIVA, 228 F.R.D. 389, 393 (D.D.C. 2005) ("[I]n this circuit courts grant vacatur of default more freely than vacatur of default judgment."). When applying Rule 60(b)[2] in the context of a motion to vacate a default judgment, the factors a district court must consider "are whether: (1) the default was willful, (2) the alleged defense was meritorious, and (3) a set-aside would prejudice plaintiff." Int'l Painters & Allied Trades Union and Indus. Pension Fund v. H.W. Ellis Painting Co., Inc., 288 F. Supp. 2d 22, 26 (D.D.C. 2003) (citing Jackson, 636 F.2d at 835). A defendant's "deliberate decision to default . . . is generally not excusable." Id. Ultimately, "the decision whether a default judgment should be set aside is one committed to the sound discretion of the trial court." Jackson, 636 F.2d at 835.

---

[2] "Federal Rule of Civil Procedure 60(b) authorizes a court to relieve a party from a previous judgment or order for six enumerated reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence; (3) fraud, misrepresentation, or other misconduct by an opposing party; (4) a void judgment; (5) a satisfied, released, or discharged judgment; or (6) 'any other reason justifying relief from the operation of the judgment.'" Norris v. Salazar, 277 F.R.D. 22, 25 (D.D.C. 2011) (quoting Fed. R. Civ. P. 60(b)).

### a. Meritorious Defense

The point bears repeating: this is Ergo's third motion to set aside the default (or default judgment) in this case, and its fourth motion challenging the validity of service of process. The Court rejected each of Ergo's previous requests, all in written opinions. The only new "argument" Ergo offers is the only one the Court will consider: Ergo now claims that the District of Columbia Corporations Division was "careless at best or untruthful at worst" when it previously certified that it forwarded the serving documents to Ergo's registered agent, after Robinson requested that it do so (through established statutory procedures). Def.'s Third Mot. to Vacate [ECF No. 40] at 6-7. In support of this argument, Ergo includes a signed and sealed "certificate" from Patricia E. Grays, the District of Columbia Superintendent of Corporations. See Ex. A to Def.'s Third Mot. to Vacate. The certificate attests that "[a] copy of the Summons and Complaint was sent by certified mailed [sic] on October 11, 2012 to the known address for" Ergo. Id. It goes on to state that "the aforesaid Service of Process has been returned to this office on November 2, 2012." Id. Ergo claims that this is proof that service of process in this case was never completed properly, and that, therefore, the Court lacked personal jurisdiction over Ergo, and the default judgment should be set aside.

This "certificate" amounts to a completely unacknowledged and unexplained 180-degree reversal for Grays, the D.C. Superintendent of Corporations. On January 14, 2014—just four months earlier—Grays signed her first "certificate" in this case. That one started with the same language about the serving documents being "sent by certified mailed [sic]" to Ergo's last known address. Attach. 1 to Pl.'s Sur-Reply In Opp'n to Ergo's Mot. to Dismiss [ECF No. 19-1]. Then, Grays wrote "that the aforesaid Service of Process has not been returned to this office." Id. (emphasis added).

To sum up: the Court was told on January 14, 2014 that service of process had not been returned to the DCRA Corporations Division, and then was told on April 4, 2014—by the same person—that service of process <u>had</u> been returned to the DCRA Corporations Division (in November of 2012). This frustrating, troubling, and ultimately unexplained contradiction informs the Court's analysis of Ergo's only "new" argument that it has a potentially "meritorious defense" warranting setting aside the default judgment under the three-part <u>Jackson</u> test. Importantly, the Court cannot know which "certificate" is accurate. The first version (filed by Robinson's counsel, closer in time to the events in question) seems just as likely to be accurate as the second version (filed by Ergo's counsel, after entry of a default judgment).

Another significant consideration: although defects in personal jurisdiction (defects in service of process are defects in personal jurisdiction) do go to the power of a Court to render a judgment against a party, "personal jurisdiction, unlike federal subject-matter jurisdiction, is waivable." <u>Mwani v. Bin Laden</u>, 417 F.3d 1, 11 (D.C. Cir. 2005) (internal quotation marks omitted). For this reason, Ergo is on thin ice in making new arguments relating to personal jurisdiction after filing several previous motions on the very same issue. The events in question happened in late 2012, and Ergo has offered no explanation for failing to bring this (alleged) defect in service of process to the Court's attention earlier—say, during briefing on one of its previous motions to vacate. Ergo's strategy of litigating the service-of-process issue seriatim is highly inappropriate, and continues to cause a significant waste of the Court's and the parties' resources.

Even if the Court were to consider the service-of-process issue on a clean slate, the only new (alleged) information relates to actions taken (or, more precisely, not taken) by the DCRA Corporations Division. None of <u>Robinson's</u> behavior in attempting to serve process has been

called into question. There is no dispute that Robinson did everything she could to serve process under the D.C. Code—and she only served the DCRA Corporations Division (through a process explicitly permitted by the D.C. Code, see D.C. Code § 29-104.12(d)) because Ergo's registered agent for service of process was intentionally evading service. See Feb. 12, 2014 Mem. Op. at 3 (discussing Ergo's "bad-faith strategy of intentional delay").

Finally, assuming arguendo that Ergo had a legitimate (or even reasonable) argument about a defect in personal jurisdiction, this would not have provided a meritorious defense to the merits of the underlying action—only to the entry of a default judgment. Ergo does not claim to have any defense to the underlying allegations of sexual harassment (nor did it offer any hint of the existence of any such defense at the damages hearing—in which the severity of the alleged harassment was an important issue relating to damages). Although case law on this point is sparse, it is reasonable to think that the "meritorious defense" factor contemplated by the D.C. Circuit in Jackson refers to a meritorious defense to the underlying allegations of the complaint—not a procedural hiccup that would simply restart the proceedings, ultimately leading to the same bottom-line result. For all these reasons, the Court finds that the "meritorious defense" factor is, at best, neutral.

### b. Willfulness and Prejudice

The other two Jackson factors—willfulness of the default and prejudice to the plaintiff—both weigh strongly in favor of leaving the default judgment in place. As already discussed at length in a previous opinion, Ergo has admitted that it made a deliberate and strategic decision to ignore plaintiff's complaint. See Feb. 12, 2014 Mem. Op. & Order at 4-5. "The Court has found no case where a court set aside a default judgment in the face of a willful default, and several cases suggest that a finding of willfulness is virtually dispositive." Id. And Robinson will be

prejudiced here by setting aside the default, including, for example, because the costs to litigate this matter have already exceeded the total value of plaintiff's damage award—due, in large part, to Ergo's seriatim filing of frivolous motions.

*       *       *

On balance, the Court finds that the <u>Jackson</u> factors—to be considered more strictly now that a default judgment has been entered—require the Court to leave the default judgment in place. The Court may never know exactly what happened with service of process in this case, but Ergo's arguments, ultimately, are too little, too late to meet the high standard for vacating a final judgment under Rule 60(b). The motion to vacate will be denied.

**II. Attorney's Fees**

Turning to the issue of attorney's fees, Ergo seeks: (1) reconsideration of the Court's Order granting Robinson's unopposed motion for attorney's fees, (2) leave to file a belated opposition brief to Robinson's motion for attorney's fees, and (3) leave to take discovery from Robinson and her counsel on the issue of attorney's fees. All three requests are meritless, and will be denied.

Under the Local Civil Rules for the U.S. District Court for the District of Columbia, "[w]ithin 14 days of the date of service" of a motion, "an opposing party shall serve and file a memorandum of points and authorities in opposition to the motion. If such a memorandum is not filed within the prescribed time, the Court may treat the motion as conceded." Local Rule 7(b). This rule is not some obscure technicality; it is regularly enforced in this district. <u>See, e.g.</u>, <u>Cromartie v. District of Columbia</u>, 729 F. Supp. 2d 281, 285 (D.D.C. 2010), <u>aff'd</u>, 479 F. App'x 355 (D.C. Cir. 2012). And the D.C. Circuit has repeatedly affirmed enforcement of this rule as an appropriate exercise of district court authority and discretion. <u>See, e.g.</u>, <u>Fox v. Am. Airlines,</u>

8

Inc., 389 F.3d 1291, 1294-95 (D.C. Cir. 2004) ("This court has yet to deem such a straightforward application of Local Rule 7(b) an abuse of discretion and . . . we see no reason for doing so here."); Twelve John Does v. District of Columbia, 117 F.3d 571, 577 (D.C. Cir. 1997) ("Where the district court relies on the absence of a response as a basis for treating the motion as conceded, we honor its enforcement of the rule.").

Robinson's motion for attorney's fees was a perfect candidate for enforcement of Local Rule 7(b). First, Ergo had already exhibited a pattern of intentionally ignoring Robinson's filings. See Apr. 17, 2014 Order ("This is not the first time Ergo has ignored Robinson's filings."). Second, this was an attorney's fees motion, collateral to the merits of the case. Third, the Court's independent "review of Robinson's motion (which included counsel's billing statements) reveal[ed] no obvious errors or improprieties." Id. at 2. Fourth, Ergo was represented by counsel. Finally, it is not as if Ergo narrowly missed the 14-day deadline and then filed a helpful opposition brief and humbly requested belated leave to file—the Court granted the motion for fees after 27 days without a response, and Ergo's first acknowledgment of the motion's existence came in its omnibus "emergency" motion, on June 19, 2014. That was 90 days after the fee motion was filed (on March 21, 2014), and came after Ergo had filed its third motion to vacate—a motion that contained no mention of the fact that Robinson had filed a motion for attorney's fees (let alone that the Court had already granted it as conceded).

For these reasons, the Court will deny Ergo's request to reconsider the Court's Order granting Robinson's motion for attorney's fees as conceded, and will deny Ergo's motion for leave to file an untimely opposition brief. Finally, regarding Ergo's belated request to take discovery of Robinson and her counsel on the issue of attorney's fees, the Court need not say anything, except that the request is denied as moot.

### III. Writs of Attachment

Ergo also seeks—on an "emergency" basis—to stay, modify, or dissolve some of the writs of attachment that currently encumber various debts owed to Ergo by four local businesses. Under Rule 69 of the Federal Rules of Civil Procedure, a plaintiff seeking to enforce a judgment may use "a writ of execution," as long as it "accord[s] with the procedure of the state where the court is located." Fed. R. Civ. P. 69(a)(1). And, in the District of Columbia, the D.C. Code sets out a statutory procedure for doing so. See D.C. Code §§ 16-541 et seq.

Importantly, Ergo does not argue that Robinson's writs of attachment—which have now been ordered and docketed by the Clerk and the Chief Judge of this court—are somehow procedurally improper. And, on their face, the writs appear to have been issued in compliance with the relevant provisions of the D.C. Code (and thus, in compliance with Federal Civil Rule 69). So, the Court's analysis begins with the assumption that all of the writs are legally valid.[3]

The legal validity of the writs, then, begs the question: what is Ergo's basis for nullifying, staying, or modifying them? Ergo offers only one: a vague appeal to the "fairness" concerns supposedly implicated by Robinson's having attached more assets than would be necessary to satisfy the judgment (that is, assuming all of the attached assets were to be paid to Robinson). But, once again, Ergo does not argue that Robinson's (admittedly aggressive) approach to enforcing the unpaid judgment actually violates any D.C. or federal statute, regulation, or rule of procedure. Ergo argues only that it is "unfair" that so much money is now frozen in place, making it difficult for Ergo to pay its (other) bills.

Under the circumstances of this case, Ergo's appeal to fairness falls on deaf ears. Ergo's dilemma is of its own making. There is nothing unfair about seeking to enforce a validly entered

---

[3] Because of Ergo's failure to make any argument that the writs were issued improperly, the Court issues no holding on that question.

judgment when the defendant refuses to pay. And Robinson's decision to attach more assets than necessary does not change the result—this tactic can likely be explained by Robinson's (seemingly well-founded) concern that Ergo would make it as difficult as possible to collect on her judgment. Ultimately, if Ergo wishes to extinguish the writs of attachment, the Court offers the following suggestion: pay the judgment. Ergo has made no suggestion it cannot afford a one-time payment of $58,330. And all of Ergo's procedural challenges to the judgment have, once again, proved meritless, so no excuses for delay remain. The moment Ergo pays the judgment it will be free of the burdens created by the writs of attachment. The timing of this process is now up to Ergo alone.

## CONCLUSION AND ORDER

Upon consideration of [40] [51] [53] [54] [57] [61] the parties' miscellaneous procedural motions, the parties' memoranda, applicable law, and the entire record herein, it is hereby

**ORDERED** that [40] Ergo's motion to vacate the default judgment is **DENIED**; it is further

**ORDERED** that [57] Ergo's motion to reconsider [39] the Court's April 17, 2014 Order granting Robinson's motion for attorney's fees and costs is **DENIED**; it is further

**ORDERED** that [57] Ergo's motion for leave to file an untimely opposition brief to Robinson's motion for attorney's fees and costs is **DENIED**; it is further

**ORDERED** that [57] Ergo's motion for discovery on the issue of attorney's fees is **DENIED**; it is further

**ORDERED** that [57] Ergo's motion to stay, modify, or dissolve the writs of attachment is **DENIED**; it is further

**ORDERED** that [57] Ergo's motion for one of the third-party garnishee's funds to be

deposited in the Court's registry pending resolution of [40] Ergo's motion to vacate the default judgment is **DENIED AS MOOT**; it is further

ORDERED that the writs of attachment shall be dissolved upon Ergo's full satisfaction of [32] the March 4, 2014 default judgment and [39] the April 17, 2014 Order granting Robinson's motion for attorney's fees and costs ("the judgments"); it is further

ORDERED that the parties shall file a joint status report (or separate status reports, if they cannot agree) with respect to payment of the judgments either within 24 hours of Ergo's full satisfaction of the judgments, or by not later than July 9, 2014, whichever is earlier; it is further

ORDERED that the parties shall transmit a copy of the status report(s) to each of the third-party garnishees; it is further

ORDERED that the Clerk of the Court shall mail a copy of this Memorandum Opinion & Order to each of the third-party garnishees at the addresses listed on the docket; it is further

ORDERED that the Clerk of the Court shall mail a copy of this Memorandum Opinion & Order to Patricia E. Grays, District of Columbia Superintendent of Corporations; and it is further

ORDERED that [51] [53] [54] [61] Robinson's motions for orders to release funds shall be **HELD IN ABEYANCE**, to be revisited by the Court upon receipt of the parties' status report(s).

**SO ORDERED**.

_____/s/_____
JOHN D. BATES
United States District Judge

Dated:  July 2, 2014